

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | MISC. ACTION NO. |
| | ) | |
| v. | ) | 3-13MC 012-L |
| | ) | |
| GOLDMAN SCHWARTZ, INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE OF APPOINTMENT OF RECEIVER

Pursuant to the provisions of 28 U.S.C. § 754, Charlene C. Koonce provides notice of her

appointment as Receiver in the case styled above. True and correct copies of the Complaint filed by

the Federal Trade Commission, the Agreed Order Granting Motion for Temporary Restraining

Order and Order to Show Cause, and Order lifting the seal of all filings are attached hereto as

**Exhibit A**, **Exhibit B**, and **Exhibit C** respectively.

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**

By:     */s/ Charlene C. Koonce*
          Charlene C. Koonce
          State Bar No. 11672850
500 North Akard Street, Suite 2700
Dallas, Texas 75201
Telephone: 214.706.4200
Telecopier: 214.706.4242
Charlene.Koonce@SolidCounsel.com

**RECEIVER**

United States Courts
Southern District of Texas
FILED

JAN 1 4 2013

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**13 MC 55**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| GOLDMAN SCHWARTZ INC, a corporation, | ) **H-13-106** |
| also d/b/a Goldman, Schwartz, Lieberman & Stein, | ) |
| | ) |
| DEBTCOM, INC., a corporation, also d/b/a | ) |
| Cole, Tanner, & Wright, | ) |
| | ) |
| HARRIS COUNTY CHECK RECOVERY INC., | ) **UNDER SEAL** |
| a corporation, | ) |
| | ) |
| THE G. WRIGHT GROUP INC., a corporation, | ) |
| also d/b/a The Wright Group, | ) |
| | ) |
| GERALD WRIGHT,  a/k/a Barry Schwartz, | ) |
| | ) |
| STARLETTE FOSTER, a/k/a Star Foster, and | ) |
| | ) |
| JENNIFER ZAMORA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### PLAINTIFF FEDERAL TRADE COMMISSION'S
### COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission (Commission), for its Complaint alleges:

1.     The Commission brings this action under Sections 13(b) and 19 of the Federal

Trade Commission Act (FTC Act), 15 U.S.C. §§ 53(b) and 57b, and Section 814 of the Fair Debt

Collection Practices Act (FDCPA), 15 U.S.C. § 1692*l*, to obtain temporary, preliminary, and

permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of

monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or



practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FDCPA, 15

U.S.C. § 1692 *et seq.*

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337(a), and

1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, and 1692*l*(a).

3.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C.

§ 53(b).

## PLAINTIFF

4.     The Commission is an independent agency of the United States Government

created by statute. 15 U.S.C. §§ 41-58. The Commission enforces Section 5(a) of the FTC Act,

15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

The Commission also enforces the FDCPA, 15 U.S.C. § 1692 *et seq.*, which prohibits deceptive,

abusive, and unfair collection practices. 15 U.S.C. § 1692*l*.

5.     The Commission is authorized to initiate federal district court proceedings, by its

own attorneys, to enjoin violations of the FTC Act and the FDCPA, and to secure such equitable

relief as may be appropriate in each case, including rescission or reformation of contracts,

restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C.

§§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, and 1692*l*(a). Section 814 of the FDCPA further

authorizes the Commission to use all of the functions and powers of the Commission under the

FTC Act to enforce compliance by any person with the FDCPA, including the power to enforce

the provisions of the FDCPA in the same manner as if the violations were violations of a

Commission trade regulation rule. 15 U.S.C. § 1692*l*.

### DEFENDANTS

6.     Defendant Goldman Schwartz, Inc., also d/b/a/ Goldman, Schwartz, Lieberman &

Stein, (Goldman Schwartz) is a Texas corporation incorporated in April 2011.  Goldman

Schwartz's principal place of business is 10333 Harwin Drive, Suite 100, Houston, Texas 77036.

Goldman Schwartz transacts or has transacted business in this district and throughout the United

States.

7.     Defendant Debtcom, Inc., also d/b/a/ Cole, Tanner, & Wright, (CTW) is a Texas

corporation incorporated in July 2002.  CTW's principal place of business is 10333 Harwin

Drive, Suite 100, Houston, Texas 77036.  CTW transacts or has transacted business in this

district and throughout the United States.

8.     Defendant Harris County Check Recovery, Inc. (HCCR) is a Texas corporation

incorporated in August 2012.  HCCR's principal place of business is 10333 Harwin Drive,

Suite 100, Houston, Texas 77036.  HCCR transacts or has transacted business in this district and

throughout the United States.

9.     Defendant The G. Wright Group, Inc., also d/b/a The Wright Group, (The Wright

Group) is a Texas corporation incorporated in 1998.  The Wright Group's principal place of

business is 4531 Plantation Creek Drive, Missouri City, Texas 77459.  The Wright Group

transacts or has transacted business in this district and throughout the United States.

10.     Defendant Gerald Wright, a/k/a Barry Schwartz, (Wright) is the owner and chief

executive officer of Goldman Schwartz, CTW, and The Wright Group.   At all times material to

this Complaint, acting alone or in concert with others, he has formulated, directed, controlled,

had the authority to control, or participated in the acts and practices of Goldman Schwartz, CTW,

HCCR, and The Wright Group, including the acts and practices set forth in this Complaint.

Wright resides in this district, and, in connection with the matters alleged here, transacts or has

transacted business in this district and throughout the United States.

  11. Defendant Starlette Foster, a/k/a Star Foster, (Foster) is the registered agent for

and a director of Goldman Schwartz and CTW.  Foster is the top operations manager for

Goldman Schwartz.  At all times material to this Complaint, acting alone or in concert with

others, she has formulated, directed, controlled, had the authority to control, or participated in the

acts and practices of Goldman Schwartz and CTW, including the acts and practices set forth in

this Complaint.  Foster resides in this district and, in connection with the matters alleged here,

transacts or has transacted business in this district and throughout the United States.

  12. Defendant Jennifer Zamora (Zamora) is a collections floor manager for Goldman

Schwartz.  As a floor manager, Zamora actively collects debts from consumers in English and

Spanish, and she also trains and supervises other Goldman Schwartz debt collectors.  At all times

material to this Complaint, acting alone or in concert with others, she has formulated, directed,

controlled, had the authority to control, or participated in the acts and practices of Goldman

Schwartz, including the acts and practices set forth in this Complaint.  Zamora resides in this

district, and, in connection with the matters alleged here, transacts or has transacted business in

this district and throughout the United States.

  13. Defendants Goldman Schwartz, CTW, HCCR, and The Wright Group operate as

a common enterprise engaged in the deceptive, abusive, and unlawful debt collection acts and

practices alleged below.  Defendants conduct the business practices described below through an

interrelated network of companies that have common ownership, officers, managers, business

functions, employees, and office locations, and that commingle funds.  Because Defendants

operate as a common enterprise, each of them is jointly and severally liable for the acts and

practices alleged below.  Defendants Wright, Foster, and Zamora formulate, direct, control, have the authority to control, or participate in the acts and practices of Defendants that constitute the common enterprise.

## COMMERCE

14.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

15.     Since at least 2005, CTW has engaged in third-party debt collection of payday loans and other consumer debts.  CTW employed debt collectors who collected consumer debts until approximately April 2011.

16.     In April 2011, Goldman Schwartz was incorporated.  After the incorporation of Goldman Schwartz, CTW employees became Goldman Schwartz employees.  For at least four months, CTW continued collecting certain accounts and performing work on CTW files using Goldman Schwartz employees.  Since at least April 21, 2011, and continuing thereafter, Goldman Schwartz has engaged in third-party debt collection of payday loans and other consumer debts.  Goldman Schwartz employs up to 20 debt collectors at any given time who collect consumer debts.  Goldman Schwartz collects in English and Spanish.

17.     On August 30, 2012, HCCR was incorporated and began operating as a third-party debt collection company.  Wright and Goldman Schwartz established and operate HCCR's website.

18.     Defendants collect debts for numerous payday loan companies, including Ace

Cash Express, Advance America, Allied Cash Advance, Checkmate, First Cash Advance, and

MoneyMart.

19.     CTW, Goldman Schwartz, and HCCR have functioned as successive operating

companies that are part of a single common enterprise engaged in the collection of debts through

interstate means including the use of telephones, electronic wire transfers, and the U.S. Postal

Service.

**False Statements Used to Collect Debts, including Threatened Arrest and Legal Action**

20.     Defendants' collectors frequently use scare tactics to convince consumers to pay.

Collectors routinely claim Defendants are a law office, law firm, or a litigation firm.  These

statements are false, yet occur on a daily basis.  In fact, Wright personally claims to be an

attorney to consumers and knowingly allows collectors to tell consumers Goldman Schwartz is a

law office.  Goldman Schwartz publicly solicits business, stating on its

www.goldmanschwartz.com website that:

> The last call your debtor wants is from a lawyer's office giving them the legal
> alternatives if they don't pay you!  Our legal staff will remind the debtor of the
> ramifications a lawsuit may involve, such as depositions, liens, writs of execution,
> and the waste of time and money spent on their attorney's hourly billing.
>
> Specializing in commercial collections, the legal staff of our legal collection
> office will approach your debtor from the legal point of view not allowed to
> traditional collection agencies.  GOLDMAN SCHWARTZ has the legal muscle
> relationships to get you paid, typically with forty percent more bottom line than
> traditional agencies.

21.     In some instances, Wright, himself, tells consumers he is an attorney.  Wright

uses the alias Barry Schwartz when he claims to be an attorney working for Goldman Schwartz.

In truth and in fact, Wright is not an attorney, and Defendants neither have a legal department,

nor have employed persons to work as attorneys.

22.     Defendants' collectors routinely claim to be affiliated with, or working in conjunction with, government agencies or entities.  For example, Defendants' collectors identified themselves as "detectives of the court," claimed to work "in conjunction with the Houston District Attorney's Office," and claimed to work "hand-in-hand" with local sheriff's offices, police departments, and a district attorney's office's hot check division.  There is no organization named the Houston District Attorney's Office, and Defendants are not affiliated with the Harris County District Attorney's Office in Houston, Texas.

23.     Defendants' collectors routinely accuse consumers of committing crimes, call consumers "criminals," and tell consumers whose checks are returned due to insufficient funds that they "stole money" or committed felony "check fraud."  Yet, under most states' laws, including Texas, drafting a post-dated check later returned for non-sufficient funds is not a crime, absent independent proof of intent not to cover the check.  *See, e.g.*, Tex. Penal Code Ann. § 32.41(b) (West 2007).

24.     Defendants' collectors routinely threaten consumers that nonpayment of their debts will result in arrest, telling consumers things like "we can take you to jail," and "we'll send the sheriff's department to your job and take care of this the hard way."  Sometimes Defendants' collectors tell consumers that if they do not pay Defendants by the next day or a specific time and date, then a warrant for their arrest will be issued.  Other times Defendants' collectors threaten to press criminal charges or have consumers prosecuted.

25.     Defendants' collectors routinely claim that consumers' driver licenses will be "flagged," "prosecuted," or "suspended" and that consumers will be arrested and taken to jail if stopped by police.

26.     Sometimes Defendants' collectors falsely claim that when the consumers are arrested or taken to jail their minor children will be taken into government custody by police or child protective services.

27.     In truth and in fact, all of these accusations and threats are false because consumers have committed no crimes, and Defendants do not file criminal charges, do not seek arrest warrants, and lack a legitimate legal basis to do so.

28.     Defendants' collectors falsely claim that Defendants will file civil lawsuits against consumers. For example, collectors often say that if consumers do not pay the debt, then Defendants will be "taking it to court." Collectors also threaten consumers that if civil litigation is filed, their property could be taken away and they will have to pay Defendants' attorneys' fees and court costs when Defendants are successful. These false threats against consumers are consistent with Goldman Schwartz's website claims that Defendants will "remind the debtor of the ramifications a lawsuit may involve . . . ."

### Threatened and Actual Disclosure of Debts to Third-Parties

29.     Defendants' collectors frequently threaten to contact consumers' employers and tell them that their employee committed check fraud. Defendants' collectors also tell members of the U.S. armed services that their failure to pay will be reported to their military superiors. In many instances these threats are false and used solely as a scare tactic.

30.     In other instances, Defendants' collectors, including Zamora, actually disclose the existence of debts to third parties, including consumers' employers, military superiors, and relatives. For example, Defendants' collectors sometimes call consumers' relatives, disclose the consumers' debts to the relatives, and even seek to collect the debts from them. Defendants also

use the friends and relatives to pressure or shame consumers into paying.  In at least one instance, Defendants' collectors disclosed an alleged debt to a serviceman's military superior.

### Misrepresenting the Amount of Debt and Collecting Unauthorized Fees

31.     In some instances, the debts Defendants attempt to collect are not owed by the consumers they call.  The consumers often orally dispute these debts or request written verification that they are due.  Defendants' collectors ignore these disputes or requests for verification and repeatedly call the consumers, claim that the debts are due and payable, and threaten legal action against consumers who refuse to pay.

32.     In most instances, Defendants arbitrarily add additional fees to the debts.  Foster adds an "Attorney's Fee" of $100 to $400 and a "Late Fee" of $50 to $100 to each debt.  Around Defendants' office, these fees are referred to as "juice."  These fees are not authorized by the loan agreements creating the debts.  The so-called Attorney's Fee does not go to an attorney, and the Late Fee is not sent to the original creditor.

### Harassment and Abuse

33.     Some of Defendants' collectors and managers, including Zamora, use abusive language when collecting debts, such as calling female consumers "b*tch" or telling consumers they "need to make this f***ing payment."   Defendants' collectors sometimes call consumers repeatedly with the intent to annoy, abuse or harass, such as immediately calling consumers back after they ended the previous call.

34.     Defendants' collectors sometimes make telephone calls to consumers prior to 8:00 a.m. and after 9:00 p.m. in the consumers' time zone.

### Failure to Provide Required Notice

35.     Defendants rarely, if ever, notify consumers orally or in writing about the consumers' right to dispute and obtain written verification of the debts.  In addition, Defendants frequently fail to properly identify the source of the alleged debt, the original amount, and the basis for the asserted current amount.

### Wright, Foster, and Zamora Cause or Permit Defendants' Practices

36.     Defendants Wright, Foster, and Zamora created and allow a corporate culture permeated by lies, deception, and abuse.

37.     Defendants Wright, Foster, and Zamora personally engage in false, deceptive, harassing, and abusive collection practices.  Wright deceives consumers by calling himself a lawyer.  Foster inflates debts by adding juice.  Zamora collects directly from consumers and participates in most of Defendants' deceptive and abusive practices.

38.     In many instances, Defendants Wright, Foster, and Zamora are aware that collectors under their control and supervision engage in deceptive and abusive collection practices.  Defendants Wright, Foster, and Zamora each separately have the authority to control the conduct of Defendants' collectors.  However, Defendants Wright, Foster, and Zamora allow the collectors involved to go unpunished, or simply give them meaningless warnings.  Collectors are not suspended or terminated for violating the law.  Instead of appropriately disciplining collectors who violate the law, Defendants sometimes reward them with better accounts to collect or promote them to supervisory positions.  For example, Zamora was an abusive collector, yet she was promoted to collections floor manager.

39.     Defendants' abusive, harassing, and threatening conduct frightens consumers and causes them significant worry, mental anguish, embarrassment, and stress.  This conduct also causes problems at consumers' home and work.

40.     In many instances, to avoid the dire consequences threatened by Defendants' collectors, consumers settle debts that they believe are grossly overstated by Defendants.  In other instances, collectors coerce consumers to pay debts that they do not believe they owe.

41.     Defendants accept a number of different payment methods, including credit cards, debit cards, electronic bank drafts, and cashier's checks.  In some instances, consumers who agree to make payments are required to obtain a pre-paid debit card to make payments to Defendants.

### Defendants Change Names, Disguise Locations, and Hide Their Identities

42.     Wright owned and operated CTW prior to starting Goldman Schwartz.  After CTW was sued,[1] Wright incorporated Goldman Schwartz and moved most of CTW's debt collections operations to Goldman Schwartz.  This was not a change of location, just a change of name under a new corporate structure.  However, for at least four months some CTW accounts were not transferred to Goldman Schwartz, and CTW collections continued on these accounts. During the transition and afterward, consumers sometimes became confused and called Goldman Schwartz to speak with someone about a debt being collected by CTW.

43.     Defendants disguise their true business location.  For example, Goldman Schwartz's letterhead and website list the company's main business address as 11152

---

[1]     In the months prior to Wright forming Goldman Schwartz, CTW settled two lawsuits and was named in a third.  *Ray v. Cole, Tanner, & Wright, Inc.*, No. 3:11-cv-00058 (N.D. Tex. Nov. 25, 2011) (consent judgment); *Horton v. Cole, Tanner, & Wright, Inc.*, No. 3:10-cv-02438 (N.D. Tex. Nov. 30, 2011) (agreed judgment); *Cardwell v. Cole, Tanner, & Wright, Inc.*, No. 2:11-cv-02094 (D. Kan. Feb. 15, 2011) (complaint).

Westheimer, Suite 116, Houston, Texas 77042. This is also the address Goldman Schwartz

collectors orally give consumers to use to send their payments to the company. Although it

appears to be a real business address, the Westheimer address is actually a UPS Store private

mail box. HCCR provides no business address on its website.

44.    Many consumers report Defendants' telephone numbers to Internet message

boards and chat forums warning consumers about Defendants' abusive and illegal collection

methods. Thus, to distance themselves from their prior collections activities, Defendants

periodically change their telephone numbers. In some instances, after consumers recognize

Defendants' phone numbers on Caller ID and stop answering the calls, Defendants' switch to

cell phones that Caller ID identifies only as "wireless caller."

45.    To disguise their identity and evade responsibility for their business activities,

Defendants also periodically change the name of their debt collection company, but Defendants

do not change their illegal business tactics. Consumers filed numerous complaints about CTW

and Goldman Schwartz with the Commission, the Better Business Bureau, and the Texas

Attorney General. These complaints demonstrate that CTW and Goldman Schwartz use

similarly abusive collection practices. Although HCCR just began operations, the FTC is

already receiving complaints against HCCR. The first complaints show a similar pattern of

threats and abusive debt collection practices as those used by CTW and Goldman Schwartz.

**Combined Operations and Commingled Funds**

46.    CTW, Goldman Schwartz, and HCCR operate or have operated from the same

address, 10333 Harwin Drive, Suite 100, Houston, Texas.

47.    Wright is the sole owner of CTW, Goldman Schwartz, and The Wright Group.

While CTW and The Wright Group are separately incorporated entities, the assumed names for

both are owned by Wright. CTW and Goldman Schwartz's in-house bookkeeper paid for HCCR's telephone account using a credit card bearing Wright's name.

48.    Goldman Schwartz employees disposed of some CTW documents, but still maintain other CTW documents in Goldman Schwartz's office. For a time, Goldman Schwartz employees also collected on CTW accounts. In addition, Goldman Schwartz and CTW use the same electronic payment processor, Authorize.net.

49.    Goldman Schwartz and CTW collected over $2.5 million dollars in the 30-month time period from January 2010 to June 2012. Corporate telephone and banking records prove that Goldman Schwartz, CTW, HCCR, and The Wright Group commingle their assets. For example, Defendants routinely transferred funds between Goldman Schwartz, CTW, and The Wright Group accounts. From July to September 2011, CTW transferred over $54,000 to Goldman Schwartz's operating account and over $47,000 to Goldman Schwartz's trust account. In addition, from October 2011 to May 2012, Goldman Schwartz transferred over $164,000 from its trust account to The Wright Group.

50.    Wright is the signatory for CTW, Goldman Schwartz, and The Wright Group accounts. Corporate banking records also reveal Wright freely uses corporate credit card and checking accounts for personal items. These personal payments from corporate accounts include monthly mortgage payments and property tax on his personal residence, and monthly payments for two Cadillacs.

## VIOLATIONS OF THE FTC ACT

51.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

52.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT ONE
### False Statements Used to Collect Debts

53.     In numerous instances in connection with the collection of debts, Defendants represent, directly or indirectly, expressly or by implication, that:

(a)     Defendants are a law firm, or persons engaged as attorneys work at Defendants' office;

(b)     Gerald Wright, a/k/a Barry Schwartz, is an attorney;

(c)     Defendants' collectors are detectives, officers of the court, affiliated with a police or sheriff's department, or working in coordination with a district attorney's office;

(d)     consumers have committed a crime by having an unpaid debt or by issuing a post-dated non-sufficient funds check;

(e)     consumers will be arrested or jailed if they fail to promptly pay Defendants, and if arrested the consumers' minor children will be taken into the custody of the state by police or child protective services;

(f)     consumers' driver licenses will be suspended or "flagged" if they fail to promptly pay Defendants;

(g)    Defendants intend to take formal legal action, including seeking criminal

prosecution, obtaining a warrant for arrest, or filing a lawsuit against consumers

if they fail to promptly pay Defendants; and

(h)    the amount of the debt owed is the amount stated by Defendants.

54.    In truth and in fact:

(a)    Defendants are not a law firm, and no persons engaged as attorneys work at

Defendants' office;

(b)    Gerald Wright, a/k/a Barry Schwartz, is not an attorney;

(c)    Defendants' employees are not detectives, officers of the court, affiliated with any

police or sheriff's department, or working in coordination with any district

attorney's office;

(d)    consumers have not committed a crime by having an unpaid debt or by issuing a

post-dated non-sufficient funds check;

(e)    consumers will not be arrested or jailed if they fail to promptly pay Defendants;

and the consumers' minor children will not be taken into the custody of the state

by police or child protective services;

(f)    consumers' driver licenses will not be suspended or "flagged" if they fail to

promptly pay Defendants;

(g)    Defendants do not intend to take formal legal action, including seeking criminal

prosecution, obtaining a warrant for arrest, or filing a lawsuit against consumers

if they fail to promptly pay Defendants; and

(h)    the amount of the debt owed is not the amount stated by Defendants.

55.     Therefore, Defendants' representations set forth in Paragraph 53 of this

Complaint, are false and misleading and constitute deceptive acts and practices in violation of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE FDCPA

56.     In 1977, Congress passed the FDCPA, 15 U.S.C. § 1692 *et seq.*, which became

effective on March 20, 1978, and has been in force ever since that date.  Section 814(a) of the

FDCPA, 15 U.S.C. § 1692*l*(a), provides that a violation of the FDCPA shall be deemed an unfair

or deceptive act or practice in violation of the FTC Act, and authorizes the Commission to use all

of its functions and powers under the FTC Act to enforce compliance with the FDCPA by any

debt collector.

57.     Defendants are "debt collectors" as defined in Section 803(6) of the FDCPA,

15 U.S.C. § 1692a(6).

58.     A "consumer," as defined in Section 803(3) of the FDCPA, 15 U.S.C. § 1692a(3),

"means any natural person obligated or allegedly obligated to pay any debt."

59.     A "debt," as defined in Section 803(5) of the FDCPA, 15 U.S.C. § 1692a(5),

"means any obligation or alleged obligation of a consumer to pay money arising out of a

transaction in which the money, property, insurance or services which are the subject of the

transaction are primarily for personal, family, or household purposes, whether or not such

obligation has been reduced to judgment."

60.     According to Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), acts and

practices that violate the FDCPA also constitute unfair or deceptive acts or practices in violation

of the FTC Act.

## COUNT TWO
### False Statements Used to Collect Debts

61.     In numerous instances, in connection with the collection of debts, Defendants

used false, deceptive, or misleading representations or means, in violation of Section 807 of the

FDCPA, 15 U.S.C. § 1692e, including, but not limited to:

(a)     falsely representing or implying that Defendants were vouched for or affiliated

with the United States or any State, such as claiming to be officers or detectives of

the court, affiliated with a police or sheriff's department, or working in

conjunction with prosecuting attorneys' offices, in violation of Section 807(1) of

the FDCPA, 15 U.S.C. § 1692e(1);

(b)     falsely representing the character, amount, or legal status of a debt, or any

services rendered or compensation which may be lawfully received by a debt

collector for collection of a debt, such as adding unauthorized late fees and

attorney's fees in violation of Sections 807(2)(A) and (B) of the FDCPA,

15 U.S.C. § 1692e(2)(A) and (B);

(c)     falsely representing or implying that that Defendants are attorneys or

representatives of an attorney or that a communication is from an attorney in

violation of Section 807(3) of the FDCPA, 15 U.S.C. § 1692e(3);

(d)     falsely representing or implying that that nonpayment of a debt will result in the

arrest or imprisonment of any person, when Defendants have no intention of

taking the asserted action or such action is not lawful, in violation of Section

807(4) of the FDCPA, 15 U.S.C. § 1692e(4);

(e)     threatening to take action that cannot be legally taken or that is not intended to be

taken, such as threatening to file a lawsuit, seek criminal prosecution, obtain

warrants for arrest, and disclose the existence of a debt to third parties, in

violation of Section 807(5) of the FDCPA, 15 U.S.C. § 1692e(5);

(f)     falsely representing or implying that a consumer committed a crime or other

conduct in order to disgrace the consumer, in violation of Section 807(7) of the

FDCPA, 15 U.S.C. § 1692e(7); and

(g)     falsely representing or using deceptive means to collect or attempt to collect a

debt or to obtain information concerning a consumer, such as claiming that

consumers' minor children will be taken by police or by child protective services,

and claiming that consumers' driver licenses will be suspended or "flagged" if

they fail to promptly pay Defendants, in violation of Section 807(10) of the

FDCPA, 15 U.S.C. § 1692e(10).

## COUNT THREE
### Disclosure of Debts to Third Parties

62.     In numerous instances, in connection with the collection of debts, Defendants

communicate with third parties for purposes other than acquiring location information about

consumers, without obtaining directly the prior consent of the consumer or the express

permission of a court of competent jurisdiction, and when not reasonably necessary to effectuate

a postjudgment judicial remedy, in violation of Section 805(b) of the FDCPA, 15 U.S.C.

§ 1692c(b).

## COUNT FOUR
### Collection of Unauthorized Fees

63.     In numerous instances, in connection with the collection of debts, Defendants

used unfair or unconscionable means to collect or attempt to collect a debt, including, but not

limited to, collecting amounts, including any interest, fee, charge, or expense incidental to the

principal obligation, not expressly authorized by the agreement creating the debt or permitted by law, in violation of Section 808(1) of the FDCPA, 15 U.S.C. § 1692f(1).

## COUNT FIVE
### Harassment and Abuse

64.    In numerous instances, in connection with the collection of debts, Defendants engaged in conduct the natural consequence of which is to harass, oppress, or abuse a person, in violation of Section 806 of the FDCPA, 15 U.S.C. § 1692d, including, but not limited to:

(a)    Using obscene or profane language or language the natural consequence of which is to abuse the hearer, in violation of Section 806(2) of the FDCPA, 15 U.S.C. § 1692d(2); and

(b)    Causing a telephone to ring or engaging a person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass a person at the number called, in violation of Section 806(5) of the FDCPA, 15 U.S.C. § 1692d(5).

## COUNT SIX
### Failure to Provide Required Notices

65.    In numerous instances, in connection with the collection of debts, Defendants failed to notify consumers of their right to dispute the debts, to obtain verification of their debts, and to obtain the name of the original creditor, either in Defendants' initial communication with consumers or within five days thereafter, in violation of Section 809(a) of the FDCPA, 15 U.S.C. § 1692g(a).

## COUNT SEVEN
### Abusive Calling Outside of FDCPA Allowed Times

66.    In numerous instances, in connection with the collection of debts, Defendants communicated with a consumer at a time or place that Defendants knew or should have known to

be inconvenient to the consumer, including times before 8:00 a.m. or after 9:00 p.m. local time at the consumer's location, in violation of Section 805(a)(1) of the FDCPA, 15 U.S.C. § 1692c(a)(1).

## CONSUMER INJURY

67.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the FDCPA.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

68.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the Commission.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the Commission.

69.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 814(a) of the FDCPA, 15 U.S.C. § 1692l(a), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FDCPA, including the rescission or reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Federal Trade Commission, under Sections 13(b) and 19 of the FTC

Act, 15 U.S.C. §§ 53(b) and 57b, and the FDCPA, and the Court's own equitable powers,

requests that the Court:

A.      Award Plaintiff such preliminary injunctive and ancillary relief as may be

necessary to avert the likelihood of consumer injury during the pendency of this action and to

preserve the possibility of effective final relief, including, but not limited to, temporary and

preliminary injunctions, an order freezing assets, expedited discovery, immediate access to

business premises, and appointment of a receiver;

B.      Enter a permanent injunction to prevent future violations of the FTC Act and the

FDCPA by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers

resulting from Defendants' violations of the FTC Act and the FDCPA, including, but not limited

to, rescission or reformation of contracts, restitution, the refund of monies paid, and the

disgorgement of ill-gotten monies; and

D.      Award Plaintiff the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.

Respectfully submitted,

DAVID SHONKA
Acting General Counsel

DEANYA T. KUECKELHAN
Regional Director

Dated: January 14, 2013

THOMAS B. CARTER, Attorney-in-Charge
Texas Bar No. 03932300
Southern District of Texas Bar No. 239381
ERIC ROBERSON
Texas Bar No. 00792803
Southern District of Texas Bar No. 20890
LUIS GALLEGOS (pending *pro hac vice*)
Oklahoma Bar No. 19098

Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9372; tcarter@ftc.gov
(214) 979-9362; eroberson@ftc.gov
(214) 979-9383; lgallegos@ftc.gov
(214) 953-3079; (fax)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. H-13-106 |
| | ) | |
| GOLDMAN SCHWARTZ INC, a corporation, | ) | |
| also d/b/a Goldman, Schwartz, Lieberman & Stein, | ) | |
| | ) | |
| DEBTCOM, INC., a corporation, also d/b/a | ) | |
| Cole, Tanner, & Wright, | ) | |
| | ) | |
| HARRIS COUNTY CHECK RECOVERY INC., | ) | **UNDER SEAL** |
| a corporation, | ) | |
| | ) | |
| THE G. WRIGHT GROUP INC., a corporation, | ) | |
| also d/b/a The Wright Group, | ) | |
| | ) | |
| GERALD WRIGHT,  a/k/a Barry Schwartz, | ) | |
| | ) | |
| STARLETTE FOSTER, a/k/a Star Foster, and | ) | |
| | ) | |
| JENNIFER ZAMORA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## AGREED ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

Plaintiff Federal Trade Commission (Commission), having filed its Complaint for a

Permanent Injunction and Other Equitable Relief in this matter, under Section 13(b) of the

Federal Trade Commission Act (FTC Act), 15 U.S.C. § 53(b), and having moved for an *ex parte*

Temporary Restraining Order and other relief under Rule 65 of the Federal Rules of Civil

Procedure, Fed. R. Civ. P. 65, and the Court, having considered the Complaint, declarations,

exhibits, and memorandum of law filed in support, having previously granted an *ex parte*

1



Temporary Restraining Order appointing a Temporary Monitor, and having received the Parties'

representation that Defendants Goldman Schwartz Inc, d/b/a Goldman, Schwartz, Lieberman &

Stein; Debtcom, Inc., d/b/a Cole, Tanner, & Wright; Harris County Check Recovery Inc.; The G.

Wright Group Inc., d/b/a The Wright Group; and Gerald Wright have requested a two-day an

extension of time for the preliminary injunction hearing, and that in exchange for that extension

have agreed to 1) the appointment of the Temporary Monitor as a Temporary Receiver; 2) to

tender to the Temporary Monitor/Temporary Receiver a cashier's check obtained by Gerald

Wright from BBVA Compass Bank approximately 45 minutes after he was served with the

Court's January 16, 2013, Temporary Restraining Order to the Monitor by Saturday January 19,

2013, at 10:00 a.m.; 3) to allow the Monitor Gerald Wright to begin changing the locks on the

10333 Harwin Drive, Suite 100 office immediately upon filing of the proposed Agreed

Temporary Restraining Order, the Court finds that:

## FINDINGS OF FACT

1.     This Court has jurisdiction over the subject matter of this case and there is good cause to

believe it will have jurisdiction over Defendants.

2.     Venue lies properly with this Court.

3.     There is good cause to believe that Defendants Goldman Schwartz Inc, d/b/a Goldman,

Schwartz, Lieberman & Stein; Debtcom, Inc., d/b/a Cole, Tanner, & Wright; Harris County

Check Recovery Inc.; The G. Wright Group Inc., d/b/a The Wright Group; Gerald Wright, a/k/a

Barry Schwartz; Starlette Foster, a/k/a Star Foster; and Jennifer Zamora have engaged in, and are

likely to engage in, acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),

and multiple sections of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-

1692p, and that the Commission is likely to prevail on the merits of this action.

2

4.      There is good cause to believe that immediate and irreparable damage to the Court's

ability to grant effective final relief for consumers – including rescission or reformation of

contracts, restitution, refund of monies paid, and disgorgement of ill-gotten monies – will occur

from the sale, transfer, or other disposition or concealment by Defendants of assets or records if

Defendants are provided with advance notice of this Order, and that therefore in accordance with

Fed. R. Civ. P. 65(b), the interests of justice require that this Order be granted without prior

notice to Defendants.

5.      There is good cause to relieve the Commission of the duty to provide Defendants with

prior notice of the Commission's motion.

6.      There is good cause to appoint a Temporary Receiver over Corporate Defendants

Goldman Schwartz Inc, d/b/a Goldman, Schwartz, Lieberman & Stein; Debtcom, Inc., d/b/a

Cole, Tanner, & Wright; Harris County Check Recovery Inc.; and The G. Wright Group Inc.,

d/b/a The Wright Group.

7.      Considering the Commission's likelihood of ultimate success and weighing the equities,

granting a Temporary Restraining Order with an asset freeze, appointment of a Temporary

Receiver, and other equitable relief is in the public interest.

8.      No security is required of any agency of the United States for issuance of a Temporary

Restraining Order.  Fed. R. Civ. P. 65(c).

**DEFINITIONS**

For purposes of this Temporary Restraining Order, the following definitions shall apply:

A.      "**Corporate Defendants**" means Goldman Schwartz Inc, d/b/a Goldman,

Schwartz, Lieberman & Stein; Debtcom, Inc., d/b/a Cole, Tanner, & Wright; Harris County

3

Check Recovery Inc.; and The G. Wright Group Inc., d/b/a The Wright Group; and their successors and assigns.

B.      **"Defendants"** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

C.      **"Electronic data host"** means any person or entity that stores, hosts, or otherwise maintains electronically stored information or computer equipment.

D.      **"Financial institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

E.      **"Individual Defendants"** means Gerald Wright, a/k/a Barry Schwartz; Starlette Foster, a/k/a Star Foster; and Jennifer Zamora.

F.      **"Mail"** includes, but is not limited to, all envelopes, papers, or other items delivered, whether by United States Mail, United Parcel Service, FedEx, email, or similar delivery service.

G.      **"Receivership Defendants"** means the Corporate Defendants, as well as any affiliates and subsidiaries that conduct any business related to the Corporate Defendants' debt collection services and that the Temporary Receiver has reason to believe are owned or controlled in whole or in part by any of the Defendants.

H.      **"Temporary Receiver"** refers to the receiver identified in Paragraph XVI.

**ORDER**

**PROHIBITIONS AND CONDUCT REQUIREMENTS**

I.      **PROHIBITIONS AGAINST MISREPRESENTATIONS**

4

**IT IS THEREFORE ORDERED** that Defendants, their members, officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, in connection with collecting debts, are temporarily restrained and enjoined from participating, or assisting others in participating, in the following conduct:

    A.    misrepresenting that Defendants are a law firm, or persons engaged as attorneys work at Defendants' office;

    B.    misrepresenting that Gerald Wright, a/k/a Barry Schwartz, is an attorney;

    C.    misrepresenting that Defendants' collectors are detectives, officers of the court, affiliated with a police or sheriff's department, or working in coordination with a district attorney's office;

    D.    misrepresenting that consumers have committed a crime by having an unpaid debt or by issuing a post-dated non-sufficient funds check;

    E.    misrepresenting that consumers will be arrested or jailed if they fail to promptly pay Defendants, and if arrested the consumers' minor children will be taken into the custody of the state by police or child protective services;

    F.    misrepresenting that consumers' driver licenses will be suspended or "flagged" if they fail to promptly pay Defendants;

    G.    misrepresenting that Defendants intend to take formal legal action, including seeking criminal prosecution, obtaining a warrant for arrest, or filing a lawsuit against consumers if they fail to promptly pay Defendants;

5

H.    misrepresenting that the amount of the debt owed is the amount stated by Defendants; and

I.    misrepresenting, expressly or by implication, any material fact.

## II.    PROHIBITIONS AGAINST DECEPTIVE, UNFAIR, AND ABUSIVE CONDUCT

**IT IS FURTHER ORDERED** that Defendants, their members, officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, in connection with collecting debts, are temporarily restrained and enjoined from participating, or assisting others in participating, in the following conduct:

A.    falsely representing or implying that Defendants were vouched for or affiliated with the United States or any State, such as claiming to be officers or detectives of the court, affiliated with a police or sheriff's department, or working in conjunction with prosecuting attorneys' offices;

B.    falsely representing the character, amount, or legal status of a debt, or any services rendered or compensation which may be lawfully received by a debt collector for collection of a debt, such as adding unauthorized late fees and attorney's fees;

C.    falsely representing or implying that Defendants are attorneys or representatives of an attorney or that a communication is from an attorney;

D.    falsely representing or implying that that nonpayment of a debt will result in the arrest or imprisonment of any person, when Defendants have no intention of taking the asserted action or such action is not lawful;

6

E.      threatening to take action that cannot be legally taken or that is not intended to be taken, such as threatening to file a lawsuit against, seek criminal prosecution, obtain warrants for arrest, and disclose the existence of a debt to third parties;

F.      falsely representing or implying that a consumer committed a crime or other conduct in order to disgrace the consumer;

G.      falsely representing or using deceptive means to collect or attempt to collect a debt or to obtain information concerning a consumer, such as claiming that a consumer's minor child will be taken by police or by child protective services, and claiming that a consumer's driver license will be suspended or "flagged" if the consumer fails to promptly pay Defendants;

H.      communicating with third parties for purposes other than acquiring location information about consumers, without obtaining directly the prior consent of the consumer or the express permission of a court of competent jurisdiction, and when not reasonably necessary to effectuate a postjudgment judicial remedy;

I.      using unfair or unconscionable means to collect or attempt to collect a debt, including collecting amounts such as any interest, fee, charge, or expense incidental to the principal obligation, not expressly authorized by the agreement creating the debt or permitted by law;

J.      engaging in conduct the natural consequence of which is to harass, oppress, or abuse a person, including using obscene or profane language or language the natural consequence of which is to abuse the hearer, or causing a telephone to ring or engaging a person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass;

7

K.      failing to notify consumers of their right to dispute the debts, to obtain verification of their debts, and to obtain the name of the original creditor, either in Defendants' initial communication with consumers or within five days thereafter;

L.      communicating with a consumer at a time or place that Defendants know or should know to be inconvenient for the consumer, including times before 8:00 a.m. or after 9:00 p.m. local time at the consumer's location; and

M.      violating any provision of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p.

## III.    DISABLEMENT OF DEFENDANTS' WEBSITES

**IT IS FURTHER ORDERED** that, immediately upon service of this Order upon them, Defendants, their members, officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, in connection with collecting debts, shall:

A.      Immediately do whatever is necessary to ensure that the existing content of any website used by Defendants in connection with collecting debts, including, but not limited to, the websites whose addresses are listed on Attachment A, and containing statements or representations prohibited by this Order, cannot be accessed or modified by the public, except as permitted by Paragraph IV, below;

B.      Prevent the destruction or erasure of any website used by Defendants in connection with collecting debts, including, but not limited to, the websites whose addresses are listed on Attachment A, by preserving such websites in the format in which they are maintained currently; and

C.     Immediately notify counsel for the Commission of any other websites operated or controlled by Defendants.

## IV.     POSTING NOTICE OF LAWSUIT ON WEBSITES

**IT IS FURTHER ORDERED** that Defendants, their members, officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, in connection with collecting debts, shall immediately take whatever action is necessary to ensure that any website covered by Paragraph III.A. of this Order, shall prominently display only of the following statement:

> The Federal Trade Commission (Commission) has filed a lawsuit against Goldman Schwartz Inc, d/b/a Goldman, Schwartz, Lieberman & Stein; Debtcom, Inc., d/b/a Cole, Tanner, & Wright; Harris County Check Recovery Inc.; The G. Wright Group Inc., d/b/a The Wright Group; Gerald Wright, a/k/a Barry Schwartz; Starlette Foster, a/k/a Star Foster; and Jennifer Zamora, alleging that they have engaged in deceptive, abusive, and unfair collection practices relating to debt collection business.  The U. S. District Court for the Southern District of Texas has issued a Temporary Restraining Order prohibiting the alleged acts and practices.  You may obtain additional information directly from the Temporary Receiver, [list name and contact information], or the Commission.

Each website carrying this message shall also provide a hypertext link to the Commission's web page at www.ftc.gov, or other web page designated by counsel for the Commission.

## V.     PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, their members, officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, are temporarily restrained and enjoined

from selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone

number, Social Security number, credit card number, bank account number, email address, or

other identifying information of any person Defendants contacted in an attempt to collect a debt.

Provided, however, that Defendants may disclose the identifying information to a law

enforcement agency or as required by any law, regulation, or court order.

## ASSET FREEZE AND REPATRIATION OF ASSETS

## VI.    ASSET FREEZE

IT IS FURTHER ORDERED that Defendants, their members, officers, agents,

servants, employees, and attorneys, and all other persons in active concert or participation with

any of them, who receive actual notice of this Order by personal service, facsimile transmission,

email, or otherwise, whether acting directly or indirectly, or any of them, except as provided

herein, as stipulated by parties, or as directed by further order of the Court, are temporarily

restrained and enjoined from:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling,

concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security

interest or other interest in, or otherwise disposing of any funds, real or personal property,

accounts, contracts, shares of stock, lists of consumer names, or other assets, or any interest

therein, wherever located, including outside the territorial United States, that are:

1.    owned, controlled, or held by, in whole or in part, for the benefit of, or

subject to access by, or belonging to, any Defendant;

2.    in the actual or constructive possession of any Defendant; or

3.    in the actual or constructive possession of, or owned, controlled, or held

by, or subject to access by, or belonging to, any other corporation, partnership, trust, or any other

10

entity directly or indirectly owned, managed, or controlled by, or under common control with, any Defendant, including, but not limited to, any assets held by or for any Defendant in any account at any bank or savings and loan institution, or with any credit card processing agent, automated clearing house processor, network transaction processor, bank debit processing agent, customer service agent, commercial mail receiving agency, or mail holding or forwarding company, or any credit union, retirement fund custodian, money market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind, either within or outside the territorial United States;

B.      Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant, or subject to access by any Defendant or under any Defendant's control, without providing the Commission prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by this Paragraph;

C.      Cashing any checks or depositing any payments from customers or clients of Defendants;

D.      Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant; or

E.      Incurring liens or encumbrances on real property, personal property, or other assets in the name, singly or jointly, of any Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant.

The funds, property, and assets affected by this Paragraph shall include both existing assets and assets acquired after the effective date of this Order.

## VII.    DUTIES OF ASSET HOLDERS

**IT IS FURTHER ORDERED** that any financial institution, business entity, or person maintaining or having custody or control of any account or other asset of any Defendant, or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Defendant, that is served with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

A.      Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation,

conversion, sale, liquidation, or other disposal of any of the assets, funds, documents, or other property held by, or under its control:

    1.    on behalf of, or for the benefit of, any Defendant or any other party subject to Paragraph VI., above;

    2.    in any account maintained in the name of, or for the benefit of, or subject to withdrawal by, any Defendant or other party subject to Paragraph VI., above; and

    3.    that are subject to access or use by, or under the signatory power of, any Defendant or other party subject to Paragraph VI., above;

    B.    Deny Defendants access to any safe deposit boxes or storage facilities that are either:

    1.    titled in the name, individually or jointly, of any Defendant, or other party subject to Paragraph VI., above; or

    2.    subject to access by any Defendant or other party subject to Paragraph VI., above;

    C.    Provide the Commission, within 5 days of the date of service of the Court's Original Temporary Restraining Order, a sworn statement setting forth:

    1.    the identification number of each account or asset titled in the name, individually or jointly, of any Defendant, or held on behalf of, or for the benefit of, any Defendant or other party subject to Paragraph VI., above, including all trust accounts managed on behalf of any Defendant or subject to any Defendant's control;

    2.    the balance of each such account, or a description of the nature and value of such asset;

3.      the identification and location of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access or control by any Defendant or other party subject to Paragraph VI., above, whether in whole or in part;

4.      the identification of any Defendant or other party subject to Paragraph VI., above, that has attempted to access any account, safe deposit box, storage facility since the date of this Order; and

5.      if the account, safe deposit box, storage facility, or other asset has been closed or removed, the date closed or removed and the balance on said date;

D.      Allow representatives of the Commission immediate access to inspect and copy, or upon the Commission's request, within 5 business days of said request, provide the Commission with copies of, all records or other documentation pertaining to each such account or asset, including, but not limited to, originals or copies of account applications, account statements, corporate resolutions, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

E.      This Paragraph shall apply to existing accounts and assets, assets deposited or accounts opened after the effective date of this Order, and any accounts or assets maintained, held or controlled 2 years prior to the effective date of this Order.  This Paragraph shall not prohibit transfers in accordance with any provision of this Order, any further order of the Court, or by written agreement of the parties.

## VIII.   REPATRIATION OF ASSETS AND DOCUMENTS

**IT IS FURTHER ORDERED** that Defendants shall:

14

A.      Within 3 business days following service of this Order, or the Court's Original

January 16, 2013 Order, whichever service came first, , take such steps as are necessary to

repatriate to the territory of the United States of America all documents and assets that are

located outside such territory and are held by or for Defendants or are under Defendants' direct

or indirect control, jointly, severally, or individually;

B.      Within 3 business days following service of this Order, or the Court's Original

January 16, 2013 Order, whichever service came first, , provide the Commission with a full

accounting of all documents and assets that are located outside of the territory of the United

States of America or that have been transferred to the territory of the United States of America

under Subparagraph A, above and are held by or for any Defendant or are under any Defendant's

direct or indirect control, jointly, severally, or individually, including the addresses and names of

any foreign or domestic financial institution or other entity holding the documents and assets,

along with the account numbers and balances;

C.      Hold and retain all such documents and assets and prevent any transfer,

disposition, or dissipation whatsoever of any such documents or assets; and

D.      Within 3 business days following service of this Order, or the Court's Original

January 16, 2013 Order, whichever service came first, , provide the Commission access to

Defendants' records and documents held by financial institutions or other entities outside the

territorial United States, by signing and delivering to the Commission's counsel the Consent to

Release of Financial Records attached to this Order as Attachment B.

IX.    INTERFERENCE WITH REPATRIATION

IT IS FURTHER ORDERED that Defendants, their members, officers, agents,

servants, employees, and attorneys, and all other persons in active concert or participation with

any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, are temporarily restrained and enjoined from taking any action that may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by Paragraph VIII. of this Order, including, but not limited to:

A. Sending any statement, letter, fax, email or wire transmission, telephoning, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time as all assets have been fully repatriated according to Paragraph VIII. of this Order; or

B. Notifying any trustee, protector, or other agent of any of the Defendants of the existence of this Order, or of the fact that repatriation is required under a Court Order, until such time as all assets have been fully repatriated according to Paragraph VIII. of this Order.

## FINANCIAL STATEMENTS AND ACCESS TO RECORDS

### X.    FINANCIAL STATEMENTS AND ACCOUNTING

**IT IS FURTHER ORDERED** that within 5 business days following the service of this Order, or the Court's Original January 16, 2013 Order, whichever service came first:

A. Each Individual Defendant shall prepare and deliver to Commission counsel a completed financial statement on the form captioned "Financial Statement of Individual Defendant," that is attached to this Order as Attachment C;

B. Each Defendant shall also prepare and deliver to Commission counsel a completed statement, verified under oath:

1. specifying the name and address of each financial institution and brokerage firm at which the Defendant has accounts or safe deposit boxes. The statements shall include assets held in foreign as well as domestic accounts; and

2.    listing all persons who have received payments, transfers, or assignment of funds, assets, or property that totals $10,000 or more in any 12-month period since January 1, 2008. This list shall specify: (a) the amount(s) transferred or assigned; (b) the name of each transferee or assignee; (c) the date of the assignment or transfer; and (d) the type and amount of consideration paid to the Defendant; and

C.    Unless otherwise agreed upon with Commission counsel and the Temporary Receiver, Defendants shall also prepare and deliver to Commission counsel:

1.    a completed financial statement on the form captioned "Financial Statement of Corporate Defendant," that is attached to this Order as Attachment D, for each Corporate Defendant, and for each business entity owned, controlled or managed by Individual Defendants, regardless of whether it is a defendant in this case. The financial statements shall be accurate as of the date and time of entry of this Order; and

2.    a detailed accounting, verified under oath, for each Corporate Defendant listing:

a.    gross revenues obtained from debt collection activities (broken down by month and year) from January 1, 2008, through the date of the issuance of;

b.    all revenues obtained from debt collection activities attributable to fees added by Defendants, including attorneys fees and late fees (broken down by type of fee, month, and year) from January 1, 2008, through the date of the issuance of this Order;

c.    net profits obtained from debt collection activities (broken down by month and year) from January 1, 2008, through the date of the issuance of this Order;

d.    all amounts obtained from debt collection activities that were forwarded to the original creditor, or the successor or assignee of the original creditor (broken down by recipient, month, and year); and

e.    the full name, address, and telephone number of every consumer from whom Defendants collected a debt, and the amount paid by each (broken down by principle, interest, and fees) from January 1, 2008, through the date of the issuance of this Order.

17

## XI.   RECORDS MAINTENANCE AND NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, their members, officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, or any of them, are temporarily restrained and enjoined from:

A.      Failing to create and maintain books, records, accounts, bank statements, current accountants' reports, general ledgers, general journals, cash receipt ledgers, cash disbursement ledgers and source documents, documents indicating title to real or personal property, electronically stored information, and any other data which, in reasonable detail, accurately, fairly and completely reflect the incomes, disbursements, transactions, dispositions, and uses of Defendants' assets;

B.      Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents, including electronically stored information, that relate in any way to the business practices or business or personal finances of Defendants; to the business practices or finances of entities directly or indirectly under the control of Defendants; or to the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

C.      Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing the Commission with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

18

## XII.   CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that, under Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish to the Commission and the Temporary Receiver a consumer report concerning any of the Defendants.

## XIII.   PRESERVATION OF EXISTING RECORDS

**IT IS FURTHER ORDERED** that Defendants, their members, officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, are temporarily restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any contracts, accounting data, correspondence, email, advertisements, computer tapes, discs, electronically stored information, or other computerized storage media, books, written or printed records, handwritten notes, telephone logs, telephone scripts, recordings, receipt books, ledgers, personal and business cancelled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, and other documents or records of any kind related to the business practices or business or personal finances of Defendants, individually and jointly.

## XIV.   DUTIES OF ELECTRONIC DATA HOSTS

**IT IS FURTHER ORDERED** that pending determination of the Commission's request for a Preliminary Injunction, any electronic data host for Defendants shall:

A.    Discontinue the provision of products and services to any Defendant or any other person using a Defendant's account, and take no step to provide products or services to any Defendant except as authorized by further order of this Court;

B.    Disconnect any such computer equipment from the Internet and from any other means of remote access by Defendants or any other person, and take no step to reconnect the computer equipment except as authorized by further order of this Court;

19

C.      Deny Defendants and any other person access to Defendants' accounts for computer products and services except as authorized by further order of this Court;

D.      Deny Defendants and any other person access to the computer equipment except as authorized by further order of this Court;

E.      Prevent the modification or removal of Defendants' electronically stored information or computer equipment from its present location except as authorized by further order of this Court; and

F.      Provide counsel for the Commission, within 5 business days of receipt of a copy of the Court's Original January 16, 2013 Order, with a sworn statement disclosing the identity of any electronic data host, and the location of the computer equipment, and describing, to the extent known, the make(s) and model(s) of the computer equipment, as well as the operating system(s) in use, and the number, size, and capacity of any mass storage arrays or devices, in order that the Commission may arrange for imaging of the contents of any of the mass storage arrays or devices.

## XV.   IMMEDIATE ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that:

A.      Defendants and their members, officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, shall immediately identify for the Commission's counsel and the Temporary Receiver:

1.      All of Defendants' business premises;

2.      Any non-residence premises where any Defendant conducts business, sales operations, or customer service operations;

3.      Any non-residence premises where documents or electronically stored information related to the business, sales operations, or customer service operations of any

Defendant are hosted, stored, or otherwise maintained, including but not limited to the name and location of any electronic data hosts; and

        4.     Any non-residence premises where assets belonging to any Defendant are stored or maintained; and

      B.     Defendants and their members, officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, and the Temporary Receiver shall allow the Commission's representatives, agents, and assistants immediate access to the business premises, mail drops, storage facilities, electronically stored information, and all other business locations owned, controlled, or used by Defendants, including, but not limited to, business premises at or in the vicinity of the following street addresses: 10333 Harwin Drive, Suites 100 and 150, Houston, Texas 77036, and 11152 Westheimer, Suite 116, Houston, Texas 77042. The purpose of the access shall be to effect service and to inspect and copy materials relevant to this action. The Commission shall have the right to remove documents from Defendants' premises in order that they may be inspected, inventoried, and copied. The Commission shall return any removed documents within 5 business days, or such time-period that is agreed upon by the Commission and Defendants. Defendants, to the extent they are in possession of documents and electronically stored information relevant to this action, shall provide the Commission with the means necessary to access these documents and electronically stored information, including without limitation keys and combinations to locks, computer passwords and access codes, and storage area access information;

      C.     The Temporary Receiver shall subsequently allow the Commission's representatives and Defendants and their representatives reasonable access to the business premises of Receivership Defendants. The purpose of this access shall be to inspect and copy any and all books, records, accounts, electronically stored information, and other property owned

21

by or in the possession of Receivership Defendants. The Temporary Receiver shall have the discretion to determine the time and manner of this access; and

        D.     If, at the time of service of this Order, any records, electronically stored information, or property relating to Receivership Defendants, or to any Defendant's assets are located in the personal residence of any Individual Defendant, or in any other non-business location under the personal control of any Individual Defendant, then such Defendant(s) shall, within 48 hours of service of this Order or the Court's Original January 16, 2013 Order, whichever came first, , produce to the Commission, at a location designated by the Commission, the following:

        1.     all contracts, accounting data, written or electronic correspondence, advertisements, computer tapes, discs, electronically stored information, or other computerized or electronic records, books, written or printed records, handwritten notes, telephone logs, telephone scripts, telephone bills, receipt books, ledgers, customer records and lists, refund records, receipts, ledgers, bank records (including personal and business monthly statements, canceled checks, records of wire transfers, and check registers), appointment books, copies of federal, state, and local business or personal income or property tax returns, 1099 forms, title records, and other documents or records of any kind related to Defendants' business and assets: and

        2.     all computers, electronically stored information, and data in whatever form, used by Defendants, in whole or in part, relating to Defendants' business and assets.

## RECEIVERSHIP

## XVI.  APPOINTMENT OF TEMPORARY RECEIVER

        **IT IS FURTHER ORDERED** that: *Charlene C. Koonce* is appointed Temporary Receiver for Receivership Defendants, as well as for any successors, assigns, affiliates, and subsidiaries that conduct any business related to Defendants' debt collection business, and that the Temporary Receiver has reason to believe is owned or controlled in whole or in part by any of the Receivership Defendants, with the full power of an equity receiver. The

22

Temporary Receiver shall be the agent of this Court and solely the agent of this Court in acting as Temporary Receiver under this Order. The Temporary Receiver shall be accountable directly to this Court. The Temporary Receiver shall comply with all Local Rules of this Court governing receivers.

## XVII. RECEIVERSHIP DUTIES

**IT IS FURTHER ORDERED** that the Temporary Receiver is directed and authorized to perform and accomplish the following:

A.      Assume full control of Receivership Defendants by removing the Individual Defendants, and any other officer, manager, independent contractor, employee, or agent of Receivership Defendants from control and management of the affairs of Receivership Defendants;

B.      Collect, marshal, and take custody, control and possession of all the funds, property, premises, accounts, mail, and other assets of, or in the possession or under the control of Receivership Defendants, wherever situated, the income and profits, and all sums of money now or hereafter due or owing to Receivership Defendants with full power to: collect, receive, and take possession of all goods, chattels, rights, credits, monies, effects, lands, leases, books and records, work papers, records of accounts, including computer-maintained information and electronically stored information, contracts, financial records, monies on hand in banks and other financial institutions, and other papers and documents of Receivership Defendants and other individuals or corporations whose interests are now held by or under the direction, possession, custody or control of the Receivership Defendants;

C.      Collect, marshal, and take custody, control, and possession of all electronically stored information maintained or stored on any Smartphones, flash drives, telephones, PDAs, desktop personal computers and workstations, laptops, notebooks, and other portable computers, or other electronic storage media, whether personal or business, for the purposes of the Temporary Receiver to determine whether the device contains electronically stored information relating to Receivership Defendants' business practices. The Temporary Receiver shall make

23

available for copying and imaging by Plaintiff and Defendants all business-related electronically stored information maintained or stored on the devices;

      D.    Perform all acts necessary to conserve, hold, manage, and preserve the value of those assets in order to prevent any irreparable loss, damage and injury to business venture purchasers, and all acts incidental thereto, including the suspension of operations;

      E.    Perform all acts necessary to ensure that Receivership Defendants are in compliance with the provisions of this Order, including ceasing all debt collection practices that misrepresent, expressly or by implication, any material fact or violate, or assist others in violating, any provision of the FDCPA, 15 U.S.C. §§ 1692-1692p;

      F.    Make best efforts to notify Receivership Defendants' customers about this Order, the efforts can include posting this Order on Receivership Defendants' websites;

      G.    Enter into agreements in connection with administration of the receivership, including, but not limited to:

      1.    the retention and employment of investigators, attorneys, or accountants of the Temporary Receiver's choice, including, without limitation, members and employees of the Temporary Receiver's firm, to assist, advise, and represent the Temporary Receiver; and

      2.    the movement and storage of any equipment, furniture, records, files, or other physical property of Receivership Defendants; and

      H.    Institute, prosecute, compromise, adjust, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Temporary Receiver deems necessary and advisable to preserve the value of the properties of Receivership Defendants or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this Order, and likewise to defend, compromise or adjust or otherwise dispose of any or all actions or proceedings instituted against the Temporary Receiver or Receivership Defendants that the Temporary Receiver deems necessary and advisable to preserve the properties of Receivership Defendants or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this Order.

XVIII. TEMPORARY RECEIVER'S BOND

[Intentionally left Blank]

XIX. COOPERATION WITH THE TEMPORARY RECEIVER

IT IS FURTHER ORDERED that Defendants, their members, officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly:

A.     Shall fully cooperate with and assist the Temporary Receiver. This cooperation and assistance shall include, but not be limited to, providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority and discharging the responsibilities of the Temporary Receiver under this Order; providing any password required to access any computer, electronically stored information, or electronic files in any medium; or advising all persons who owe money to Receivership Defendants that all debts should be paid directly to the Temporary Receiver; and

B.     Are temporarily restrained and enjoined from directly or indirectly:

1.     transacting any of the business of Receivership Defendants, or transacting business under the name of Receivership Defendants, or any substantially similar name;

2.     destroying, concealing, defacing, transferring, or otherwise altering or disposing of any documents of Receivership Defendants, including, but not limited to, books, records, accounts, documents, electronically stored information, or any other papers of any kind or nature;

3.     transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, Receivership Defendants or the Temporary Receiver;

4.     excusing debts owed to Receivership Defendants;

25

5.      failing to notify the Temporary Receiver of any asset, including accounts, of any Receivership Defendant held in any name other than the name of any Receivership Defendant, or by any person or entity other than Receivership Defendants, or failing to provide any assistance or information requested by the Temporary Receiver in connection with obtaining possession, custody, or control of such assets; or

6.      doing any act or refraining from any act whatsoever to interfere with the Temporary Receiver's taking custody, control, possession, or managing of the assets or documents subject to this receivership; or to harass or interfere with the Temporary Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of Receivership Defendants; or to refuse to cooperate with the Temporary Receiver or the Temporary Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XX.   DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that:

A.      Immediately upon service of this Order upon them, or within a period permitted by the Temporary Receiver, Defendants and all other persons in possession, custody, and control of assets or documents of Receivership Defendants shall transfer or deliver possession, custody, and control of the following to the Temporary Receiver:

1.      all assets of Receivership Defendants;

2.      all documents of Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), mail, client lists, collection records, title documents, electronically stored information, and other papers; and

3.      all assets belonging to members of the public now held by Receivership Defendants.

B.      In the event any person or entity fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Paragraph, the Temporary Receiver may file, on an *ex parte* basis, an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Temporary Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county to seize the asset, document, or other thing and to deliver it to the Temporary Receiver.

## XXI.   TEMPORARY RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that the Temporary Receiver shall report to this Court on or before the date set for the hearing to Show Cause regarding the Preliminary Injunction regarding: (1) the steps taken by the Temporary Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated assets of Receivership Defendants; (3) the sum of all liabilities of Receivership Defendants; (4) the steps the Temporary Receiver intends to take in the future to:  (a) prevent any diminution in the value of assets of Receivership Defendants; (b) pursue receivership assets from third parties; and (c) adjust the liabilities of Receivership Defendants, if appropriate; and (5) any other matters that the Temporary Receiver believes should be brought to the Court's attention.  Provided, however, if any of the required information would hinder the Temporary Receiver's ability to pursue receivership assets, the portions of the Temporary Receiver's report containing the information may be filed under seal and not served on the parties.

## XXII.  BANKRUPTCY PETITIONS

**IT IS FURTHER ORDERED** that:

A.      In light of the asset freeze and appointment of the Temporary Receiver, Defendants are prohibited from filing, or causing to be filed, on behalf of any Receivership Defendant, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, without prior permission from this Court.

B.      In light of the asset freeze, Individual Defendants must give 21 days' notice to the Commission prior to filing, or causing to be filed, on behalf of any Individual Defendant, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

## XXIII. TRANSFER OF FUNDS TO THE TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, or other financial institutions shall cooperate with all reasonable requests of the Temporary Receiver relating to implementation of this Order, including producing records related to the assets of Receivership Defendants.

## XXIV. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

A.      Except by leave of this Court, during pendency of the receivership, Defendants and all other persons and entities (except for the Commission) are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of: (a) Receivership Defendants, or (b) any of assets of Receivership Defendants, or (c) the Temporary Receiver or the Temporary Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

1.      commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that the actions may be filed to toll any applicable statute of limitations;

2.      accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3.      executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; and

28

4.      doing any act or thing whatsoever to interfere with the Temporary

Receiver taking custody, control, possession, or management of the assets or documents subject

to this receivership, or to harass or interfere with the Temporary Receiver in any way, or to

interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents

of Receivership Defendants.

B.      Subparagraph A of this Paragraph does not stay:

1.      the commencement or continuation of a criminal action or proceeding;

2.      the commencement or continuation of an action or proceeding by a

governmental unit to enforce the governmental unit's police or regulatory power;

3.      the enforcement of a judgment, other than a money judgment, obtained in

an action or proceeding by a governmental unit to enforce the governmental unit's police or

regulatory power; or

4.      the issuance to Receivership Defendants of a notice of tax deficiency.

C.      Except as otherwise provided in this Order, all persons and entities who need

documentation from the Temporary Receiver shall in all instances first attempt to secure the

information by submitting a formal written request to the Temporary Receiver, and, if the request

has not been responded to within 30 days of receipt by the Temporary Receiver, any person or

entity may thereafter seek an order of this Court with regard to the relief requested.

## XXV.  COMPENSATION OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver and personnel hired by the

Temporary Receiver to perform the duties under this Order, are entitled to a reasonable

compensation for the performance of duties under this Order, and for the cost of actual out-of-

pocket expenses incurred by them, from Defendants' assets.  To obtain payment, the Temporary

Receiver shall file with the Court and serve on the parties periodic requests for the payment of

reasonable compensation, with the first request filed no more than 60 days after the date of this

Order.  The Temporary Receiver shall not increase the hourly rates used as the bases for the fee

applications without prior approval of the Court.

29

## XXVI. TEMPORARY RECEIVER'S ACCESS TO PREMISES AND RECORDS

### IT IS FURTHER ORDERED that:

A.      The Temporary Receiver, and its respective representatives, agents, contractors, or assistants, are permitted, and Defendants shall allow, immediate access to any business premises, mail drops, and storage facilities of Receivership Defendants. These locations include, but are not limited to, the offices and facilities of Receivership Defendants at or in the vicinity of: 10333 Harwin Drive, Suites 100 and 150, Houston, Texas 77036 and 11152 Westheimer, Suite 116, Houston, Texas 77042.

B.      The Temporary Receiver is authorized to employ the assistance of law enforcement officers, including, but not limited to, the Harris County Constable Precinct 5, to effect service, to implement peacefully the provisions of this Order, and to keep the peace. The Temporary Receiver may exclude Defendants and their agents and employees from the business premises and facilities.

C.      Defendants and all agents or employees of Defendants shall provide the Temporary Receiver with any necessary means of access to documents, including, without limitation, the locations of Receivership Defendants' business premises, keys and combinations to business premises locks, computer access codes of all computers used to conduct Receivership Defendants' business, and storage area access information.

D.      The Temporary Receiver is authorized to copy any documents related to Defendants' business practices, including by forensic imaging of electronically stored information. The Temporary Receiver is authorized to remove any documents related to Defendants' business practices from the premises in order that they may be inspected, inventoried, and copied. The materials removed shall be returned within 5 business days of completing inventory and copying.

## NOTIFICATION AND MONITORING PROVISIONS

## XXVII. DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, sales entity, successor, assign, member, officer, employee, agent, servant, attorney, subsidiary, division, and representative of any of the Defendants, and shall, within 3 days from the date of entry of this Order, provide the Commission with a sworn statement that Defendants have complied with this provision of the Order, this statement shall include the names and addresses of each person or entity who received a copy of this Order.

## XXVIII. SERVICE OF ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission, email, and overnight delivery service, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of any Defendant, or that may be subject to any provision of this Order. Under Fed. R. Civ. P. 4(c)(2), this Order and the initial papers filed in this matter may be served on Defendants, upon the business premises of Defendants, and upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of any of the Defendants, or that may be subject to any provision of this Order, by employees of the Commission, by employees of any other law enforcement agency, by any agent of the Commission, or by any agent of any process service retained by the Commission.

## XXIX. MONITORING

**IT IS FURTHER ORDERED** that agents or representatives of the Commission may contact Defendants or their agents or representatives directly and anonymously for the purpose of monitoring compliance with this Order, and may record any oral communications that occur in the course of the contacts.

### PRELIMINARY INJUNCTION PROCEEDINGS

## XXX.  ORDER TO SHOW CAUSE

**IT IS FURTHER ORDERED** that, under Fed. R. Civ. P. 65(b), Defendants Goldman Schwartz Inc, d/b/a Goldman, Schwartz, Lieberman & Stein; Debtcom, Inc., d/b/a Cole, Tanner, & Wright; Harris County Check Recovery Inc.; The G. Wright Group, Inc., d/b/a The Wright

31

Group, Gerald Wright, a/k/a Barry Schwartz; Starlette Foster, a/k/a Star Foster; and Jennifer Zamora; shall appear before this Court, located at United States District Court for the Southern District of Texas, United States Courthouse, Courtroom 700, 515 Rusk Avenue, Houston, Texas, 77002, on the 28th day of January 2013, at 9 (a.m)/p.m. CST, to show cause why this Court should not enter a preliminary injunction, pending final ruling on the Complaint, against Defendants enjoining them from violations of the FTC Act and the FDCPA, and imposing additional relief as may be appropriate, and appointing a permanent receiver over Defendants Goldman Schwartz Inc, d/b/a Goldman, Schwartz, Lieberman & Stein; Debtcom, Inc., d/b/a Cole, Tanner, & Wright; Harris County Check Recovery Inc.; and The G. Wright Group Inc., d/b/a The Wright Group.

**IT IS FURTHER ORDERED** that, in support of its motion for a preliminary injunction, the Commission may submit supplemental evidence discovered subsequent to the filing of its motion for a TRO, as well as a supplemental memorandum.  The Commission shall file and serve any supplemental evidence and memorandum by no later than 4:30 p.m. CST on Tuesday January 22, 2013, or the third court day prior to the preliminary injunction hearing as scheduled above, whichever is later.  The documents may be served on each Defendant by email, or fax, or by delivering the document(s) to the attorney(s) for Defendants, or, if Defendants are not represented by counsel, to a fax number or email address previously designated by Defendants in writing to counsel for the Commission; if Defendants have not so designated a fax number or email address, service may be effected by mailing the documents to an address designated in writing by Defendants to counsel for the Commission; if no address has been so designated, service shall be complete upon filing of the documents with this Court.

**IT IS FURTHER ORDERED** that Defendants shall file and serve any opposition to the issuance of a preliminary injunction and the appointment of a permanent receiver over Receivership Defendants, including any declarations, exhibits, memoranda or other evidence upon which they intend to rely, and objections to any evidence submitted by the Commission, by

32

no later than 4:30 p.m. CST of the third court day prior to the hearing on the preliminary

injunction. These documents shall be served by email or fax upon the Commission's counsel.

**IT IS FURTHER ORDERED** that the Commission shall file and serve any reply to

Defendants' opposition by no later than the second court day prior to the preliminary injunction

hearing.

## XXXI. SERVICE OF PLEADINGS

**IT IS FURTHER ORDERED** that the parties shall serve upon the opposing party and

this Court and file all memoranda, affidavits, and other evidence upon which they intend to rely

at the preliminary injunction hearing set in this matter not later than noon Tuesday January 22,

2013, or the second day prior to the hearing date, whichever is sooner. Service on the

Commission shall be performed by delivery to:

> Thomas B. Carter
> Federal Trade Commission
> Southwest Region
> 1999 Bryan Street, Suite 2150
> Dallas, Texas 75201-6808
> Fax: (214) 953-3079
> email: tcarter@ftc.gov

## XXXII. EXPEDITED ASSET DISCOVERY

**IT IS FURTHER ORDERED** that, in anticipation of the preliminary injunction hearing

set herein, the Commission is granted leave to conduct expedited discovery regarding

Defendants' assets. The Commission may depose any witness about Defendants' assets at any

time after the date of this Order upon 3 business days' notice. Defendants shall respond to any

asset-related interrogatories, requests for admissions, or requests for production of documents

within 3 business days after service of the discovery request. Any discovery taken or

propounded by the Commission under this Paragraph is in addition to, and not subject to, any

limits on the quantity of permissible discovery provided for in the Federal Rules of Civil

Procedure or the rules of this Court. Any limitations and conditions set forth in the Federal

Rules of Civil Procedure or the rules of this Court regarding subsequent depositions of an individual shall not apply to depositions taken under this Paragraph.

## XXXIII. DURATION OF TEMPORARY RESTRAINING ORDER

**IT IS FURTHER ORDERED** that this Temporary Restraining Order shall expire on February 5 , 2013, at 5:00 a.m. (p.m.) CST, unless before such time, the Order is extended for good cause shown, or by consent of the parties.

## XXXIV. ACKNOWLEDGMENT OF RECEIPT OF TRO

**IT IS FURTHER ORDERED** that each Defendant, within 5 business days of receipt of this Temporary Restraining Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of the Temporary Restraining Order.

## XXXV. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**IT IS SO ORDERED.**

DATED this 22nd day of January, 2013, at 4:00 a.m. (p.m.) CST.

_____
UNITED STATES DISTRICT JUDGE

34

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | § | **SEALED** |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-13-106 |
| | § | |
| GOLDMAN SCHWARTZ INC., *et al.,* | § | |
| *Defendants.* | § | |

## ORDER

Plaintiff's *ex parte* application for order temporarily sealing file and memorandum in support

is GRANTED. It is therefore ORDERED that this case and all filings are temporarily sealed. The

seal will be automatically lifted at 4:00 p.m. CST, Friday, January 18, 2013, or when counsel for the

Commission informs the Clerk of the Court that the seal is no longer necessary, whichever occurs

first without motion by the Commission or further order by the court.

Signed at Houston, Texas on January 16, 2013.



Gray H. Miller
United States District Judge



EXHIBIT
C

Page 1 of 2

...ly Urgent

2020
01.29

Origin ID: RBDA

FedEx
Express

From: (214) 706-4200
Dena Lambert
SCHEEF AND STONE LLP
500 N. AKARD STREET, SUITE 2700

DALLAS, TX 75201

BILL SENDER

SHIP TO: (214) 753-2200
Karen Mitchell, US District Clerk
USDC Northern District-Texas
1100 COMMERCE ST
STE 1452
DALLAS, TX 75242

Ship Date: 28JAN13
ActWgt: 1.0 LB
CAD: 103599655/INET3370

Delivery Address Bar Code

Ref #
Invoice #   6623.102
PO #
Dept #



JAN 2 9 2013

TUE - 29 JAN  A1
PRIORITY OVERNIGHT

75242
TX-US
DFW

TRK#   7946 1882 2020
0201

AD RBDA



FedEx
press
®

# SCHWARTZ RECEIVERSHIP
## CHARLENE C. KOONCE, RECEIVER

ORIGINAL

January 28, 2013

**Via Overnight Mail**

**3-13MC 012-L**



RECEIVED
JAN 3 0 2013
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

U.S. District Clerk
Northern District of Texas, Dallas Division
Earle Cabell Federal Bldg. & U.S. Courthouse
1100 Commerce Street, Suite 1452
Dallas, Texas 75242

Re:     *Federal Trade Commission v. Goldman Schwartz, Inc., et al.;* Civil Action No. 4:13-cv-000106; pending in the United States District Court for the Southern District of Texas, Houston Division

**Filing for Notice Purposes on Miscellaneous Docket**

Dear Sir or Madam:

Pursuant to 28 U.S.C. § 754, please find an original and one (1) copy of **Notice of Appointment of Receiver**, with true and correct copies of the **Complaint** filed by the Federal Trade Commission, the **Agreed Order Granting Motion for Temporary Restraining Order and Order to Show Cause** ("Order Appointing Receiver"), and the **Order** lifting the seal of all filings attached as exhibits.

Under 28 U.S.C. § 754, a federal receiver appointed in one district may sue in any federal district court and/or be vested with complete jurisdiction and control of all such property in that district. However, Section 754 requires that the Receiver file, within ten (10) days of his/her order of appointment, copies of the complaint and order of appointment in the district court for each district in which the receiver plans to sue or the subject property is located. Based on past experience, these are normally filed as miscellaneous filings. Accordingly, **please file these documents, including this cover letter, and return a file-stamped copy to me via the enclosed self-addressed and prepaid FedEx envelope. It is very important that these documents be filed immediately.**

Also, please find enclosed a check in the amount of $46.00 for the necessary filing fee under 28 U.S.C. § 754. Should this fee be inadequate, please file the documents (since there is a short time frame for filing) and contact me regarding the proper fee. I will send the necessary fee immediately. Thank you for your assistance in this matter and please do not hesitate to contact me or my assistant Kristine Bates, at 214.420.4256 should you have any questions.

Sincerely,

Charlene C. Koonce, Receiver